Cornerstone Title & Escrow, Incorporated v. Evanston Insurance Company. Mr. Brennan? Yes, Your Honor. I'm glad to hear from you. Thank you. Good morning. May it please the Court, Stephen Brennan representing the appellants, Cornerstone Title & Escrow, Inc. and Sean Attatua. This is an insurance coverage dispute specifically over the duty to defend under a technical services professional liability policy. The parties agreed in the district court and still agree that because of the contents of the policy and the contents of the underlying pleadings were not in dispute, that the issue of the duty to defend was appropriate for summary judgment. Appellants contend, however, that Judge Nickerson incorrectly denied their motion for summary judgment and granted Evanston's appellants from our real estate title company that purchased this policy. The policy provides coverage for claims that assert damages arising out of the provision of professional services. There's only a few definitions in the policy. Professional services are defined as the provision of title and escrow services for a fee, and damages are defined as the monetary portion of any judgment or settlement, et cetera, with certain exclusions, but the only exclusion that relates to restitution is restitution for consideration paid to the insured for goods and services. The underlying case is probably familiar with the general terms of the policy, so maybe it would be useful if you got right to the exclusions and tell us why you say the district court was wrong. All right. Thank you, Your Honor. I'll do that. The district court found that the second amended complaint filed by the Consumer Protection Division of the State of Maryland did not allege, contain any allegations or any claims that potentially fell outside of exclusions N and X. Exclusion N is, quote, and for claims, quote, based upon or arising out of the insured, the insured gaining any profit or advantage to which the insured was not, is not legally entitled, unquote. Exclusion X is more lengthy, so I'm not going to read the whole thing, but it's based upon or arising out of the actual or alleged theft, conversion, misappropriation, disappearance, or any actual or alleged insufficiency of the amount of any escrow funds. There are three counts in the complaint that really the ones that are at issue are counts one and two. Count one, both count one and count two, as we went through in substantial detail in a brief and a reply brief, were based in large part upon allegations that other defendants with whom Cornerstone was alleged to be jointly and separately liable had failed to provide statutory notices, failed to adequately disclose information relating to foreclosure contracts, failed to provide, only provided descriptions of the transactions to the homeowners in the most general terms, et cetera, improperly recorded deeds, and the allegation that Cornerstone owed a duty to sufficiently disclose, separate and apart from its joint and several liability, and failed to adhere to that duty. Count one is not based at all on any allegations relating to the disposition of the settlement proceeds, whereas count two contains alternative allegations of the types I've just described. Count one is for the alleged violations of the Protection of Homeowners and Foreclosure Act. It's a Maryland statute, and it's based entirely on the supposed improper recordation, the supposed lack of sufficient provision of information, supposed lack of provision of notices. Count two is based on those things also, in part because as Maryland's Consumer Protection Act establishes, any violation of FIFO is also a violation of the Consumer Protection Act. And it independently alleges those allegations in count two. But it also contains allegations, no doubt about it, about the settlement checks. And those allegations are that the checks were written in the, or cut in the correct amount by Cornerstone, that the checks were delivered unendorsed by agents of the Lewis defendants to the homeowners, whereupon the agents of the Lewis defendants are the Lewis defendants. Is there any allegation that the title company, your client, got any money other than its settlement fees that would show up on the HUD? No, Your Honor, there's no allegation. There's actually not really even any allegation about their receipt of the settlement fees, although they certainly did get their ordinary customary fee that showed up on the HUD. One, there's no factual allegation about the fees. There's no allegation that those fees were illegal or that those fees were anything other than customary. So our point, I think, and really our issue in a nutshell, is that we believe the district court erred because under Maryland law, the issue is not whether the second amended complaint alleged some, or really even whether it overwhelmingly alleged predominantly, allegations that would fall within policy exclusions. The issue is whether it contained any allegations that potentially fall outside of the policy exclusions. Well, tell us what fell out of exclusion X that helps you out. Well, exclusion X only relates to the, exclusion X, assuming it's not ambiguous, only potentially excludes claims in count two, the alternative claims in count two relating to the disposition of the homeowner's settlement checks. And even in count two, those are alternative allegations to support the liability. And there continue to be allegations that Cornerstone is independently liable because it failed in its duty to provide adequate disclosure to the homeowners, and it is jointly and severally liable with all the other defendants for multiple violations of failure to adequately explain the transaction, failure to provide statutory notices, improper recordation of the deed, et cetera. None of those allegations, statutory notices, improper description of the contract, improper recordation of the deed, et cetera, are covered under exclusion X. None of them have to do with theft, conversion, misappropriation of funds. The alternative allegations in count two about the settlement proceeds arguably do, although there's no allegation of theft. The allegation is that they, or for that matter, disappearance, another word, or alleged insufficiency of the funds. The allegation is that the agents of the Lewis defendants or the Lewis defendants talked the homeowners into signing, exercising their own dominion over the checks and signing them over to the Lewis defendants because the Lewis defendants allegedly told them that they needed to retain those funds to cover settlement costs and what was to be a subsequent repurchase transaction. I take it the bottom line of your argument on X is that your reading of the complaint contains allegations that could lead to Cornerstone's liability that aren't based on any of the enumerated exclusions, conversions, misappropriation, et cetera, that are listed there. Yes, that's the bottom line. And on N, I think neither counts one or two are based upon allegations that Cornerstone, the insured gained a profit or advantage to which the insured was not legally entitled. And we've discussed some of those cases in our brief. There's no allegation of illegal profiteering by Cornerstone. And the gravamen isn't whether a transaction threw off a profit. It's whether the insured's obtaining a profit, not whether other parties to the transaction obtained the profit, was illegal. Now, moving along, Judge Nickerson, Everson raised in the trial court that exclusions A and CC applied. Judge Nickerson didn't decide that issue, but I know your honors can decide a case based on matters that were raised in the trial court, whether the district court decided them or not. A is the- Assuming that we agree with you that the two exclusions the district court did reach, N and X, that the court erred on that, just assume that, why would we address A and C now instead of letting the district court have the first shot? I mean, I know we could, but I mean, why should we? Well, I think, your honor, again, we're in agreement with the parties that the issue of construction of the policy is an issue of law. And I think for purposes of judicial economy, this court certainly is in as good a position as the district court to construe the policy as a matter of law. And the issue was raised, although it wasn't decided. So I believe it would be in the best interest of the parties and of the judicial system for your honors to reach that. But I understand it's discretionary. But if you'd like to hear me on it, exclusion A is for claims based on arising out of any dishonest, deliberately fraudulent, malicious, willful, knowingly wrongful act or omission committed by or at the direction of the insured. There's no allegations in the Second Amendment complaint that the insured cornerstone was directing anybody else. The allegations are they provided real estate settlement services and perhaps should have provided additional disclosure and that their provision of those services assisted the other defendants. But there's no allegation that they directed any of them. And they certainly could have been held liable, as we set forth in our brief, for violations of FIFO or the Consumer Protection Act as in a private claim based upon non-willful, non-intentional violations, which don't provide the opportunity for the other party to get attorney's fees or travel damages. CC is for claims arising out of RESPA or any similar state or local legislation. As you know, we believe, well, obviously there are no RESPA allegations. We believe that provision is ambiguous under Maryland law. And we also have articulated in our brief the reasons why the Consumer Protection Act, which governs transactions relating to the provision of any consumer services or goods, is not similar to RESPA and also FIFO is not similar to RESPA. Although they both happen to deal with real estate, RESPA's primary goal is the illegal kickback and referral fees, which are not at issue here. And the FIFO statute doesn't apply only to real estate settlement. It applies to the entire transaction process, only for certain people who meet various definitions in a foreclosure. So we don't believe that's a similar statute. So I will, unless you have any additional questions, do I have three minutes left of my time now or is this three minutes on rebuttal? That's your initial time. It looks like you've reserved four minutes on rebuttal. Okay. Well, if there are no questions that the court would like me to address, I won't use the remaining two minutes or two and a half minutes. All right. Thank you very much. Thank you. I'm afraid I'm going to get this one wrong, so I apologize in advance. Mr. Farquharson? Farquharson, Your Honor. Farquharson. Tell us your view from the insurance company's standpoint. Thank you, Your Honor. Good morning. May it please the court. My name is Paul Farquharson on behalf of Evanston Insurance Company. If you'll pardon me, I've injured my thumb, so I may fumble a little bit up here, but I'll try not to. I think it's important to start out with a full and complete reading of Exclusion X, and we can move on to Exclusion N. And the reason is because Mr. Brennan left off, I think, a fairly important piece. He stopped reading after escrow funds. So let me just take a moment to do that. The policy does not apply to any claims made against the insured. That would be cornerstone. Based upon or arising out of the actual or alleged theft, the important piece here is conversion, misappropriation, then we go on to disappearance or any actual or alleged insufficiency in the amount of any escrow funds, monies, monetary proceeds, or any other assets, securities, negotiable instruments, or any other things of value. And then importantly, this exclusion shall apply in any and all circumstances and shall apply irrespective of which individual, party, or entity actually or allegedly committed or caused in whole or part the theft, conversion, misappropriation, disappearance, or the actual or alleged insufficiency in amount. Opposing counsel says, taking all that into account, that there are allegations in the complaint that basically are, for lack of a better word, notice-related. They didn't give the proper notices. They weren't timely. They didn't have them sign the proper releases and things of that nature, which could impose liability under one or the other of the state acts without any of these other factors coming into play. That's accurate that there are some of those allegations, but counsel fails to address the allegations in the complaint which form the gravamen of the complaint with respect to Cornerstone, which is that Cornerstone didn't give the checks to the people to whom the checks belonged. But isn't there joint and several liability in this complaint? There is an allegation of joint and several liability, but just like every other case of joint and several liability, insurance coverage applies to the acts of the policyholder or those seeking coverage. Let me give you an example, and it's one that I'm sure we've all heard of. Let's say there's a general practitioner, a doctor, who causes an automobile accident. The injured party in the automobile accident goes to the hospital and is treated by a separate doctor. That doctor commits malpractice. The first doctor is jointly and severally liable for the second doctor's malpractice, but not under the first doctor's malpractice policy. So the malpractice policy for the driver doctor is going to say, yes, there may be joint and several liability for the damages, but this policy doesn't apply because the doctor injured the plaintiff by driving the car. That's the same... Let me, is your argument here to follow up to Mr. Thacker's question? If Cornerstone were held liable in the trial court for one of these notice violations, whether they committed it or it was committed by one of the other co-defendants, your position is that your policy wouldn't cover their liability for that? Yes, and the... And that's because... That's because the conduct alleged in the complaint is not that Cornerstone failed to provide notices, it's that Cornerstone failed to deliver the checks. How does that help you with Exclusion X? Because Cornerstone is the one who's misappropriating the funds by delivering it to either the Thomas defendants or the Jones defendants. Well, but if we determined that the policy, and I don't know that until now we've heard this argument, certainly not in brief, if Cornerstone has coverage absent an exclusion in the event that there was some notice failure under one of these consumer laws, if they have liability for that, and don't you have to show an exclusion in the policy? Because if there's any claim in the complaint for which they're liable, even if there are others that an exclusion may cover, isn't there under Maryland law a duty to defend? Even if there's just one claim for which there might be liable, for which there's no exclusion. If there's a potentiality for coverage under one claim out of one or more claims, if there's a potentiality for coverage, then yes, there's a duty to defend. In this case, there is no potentiality of coverage because all of the allegations as to Cornerstone relate to either Exclusion X, Exclusion N, as Judge Nickerson found, that the grovelment of the complaint is that the defendants, Cornerstone among them, stripped the equity from the homeowners, and they did this in a concert of action. Is it your position that if there's one of these notice violations that as a matter of law under the complaint, Cornerstone could not be liable? Somebody was supposed to give a three-day rescission notice or something of that nature, and it wasn't done, and it wasn't Cornerstone's duty to do it. One of the co-defendants was supposed to do it. Is it your view that Cornerstone could not be liable based on the language of the? That is correct, and that is the same for the example that I just was trying to explain. The driver doctor, as a matter of law, cannot be liable for the conduct of the malpracticing doctor. What the driver doctor is responsible for is the resulting harm that his negligence started. So in this case, the only thing Cornerstone can be liable for is the resulting harm for its failure to deliver the checks to the appropriate people, and its failure to advise those people that it was delivering the checks to the wrong parties. And the allegations in the complaint, those allegations begin with 15 and 16 on Joint Appendix 109, and then there is a series of allegations in the complaint that begin on Joint Appendix 119, and they are paragraphs 52 through 65. Well, you are using a generalized approach, which the district just did too, but if you go with an allegation by allegation analysis, doesn't the following allegation against Cornerstone for failing to provide homeowners with notice of right to counsel transfer of needs or title, isn't that allegation outside the exclusion provided in X, and it's pled against them? I don't believe that was pled against Cornerstone. Can you direct me to where that is, Your Honor? I'm sorry. I don't have the… Well, yeah, I think it's at JA-126, but I'm not positive. That allegation alleges that it's in violation of Section 7310C of the Maryland Real Estate Code, and that's a specific allegation for which they were being sought to be held liable for. Doesn't that specific allegation fall out of exclusion X? I don't believe so, Your Honor. Well, if it did, you would agree that you'd have a duty to defend the home? I don't believe it would. It would be tantamount to suggesting that a person in a fight who injures another person intentionally somehow has coverage because a doctor who treated the victim negligently provided care. So what's being alleged with respect to Cornerstone is the purposeful misappropriation of funds as part of an overall scheme. That goes back to my initial question. You're making the generalized argument about coverages here, but there are specific allegations in the complaint against Cornerstone that are not in that scheme of things. I don't believe that's correct. There are specific allegations, and this is what I think the basis of opposing counsel's argument with respect to joint and several liability is. He's suggesting that these statutory violations were all committed by the other defendants, by the Lewis defendants or the Thomas defendants. What about paragraphs 87 and 88 of the complaint? Paragraph 15 includes Cornerstone within the definition of foreclosure rescue defendants, and 87 and 88 contend that the foreclosure rescue defendants made unfair and deceptive trade practices and made false and misleading statements to consumers. As a follow-on to Judge Floyd's question, that would not appear to me that either of those paragraphs, 89 as well, would fall under Exclusion X's provisions, and that certainly includes Cornerstone as one of the named defendants. Those allegations, to the extent they apply to Cornerstone they're defined as one of the foreclosure rescue defendants. Correct. If we move to Exclusion N, which Judge Nickerson also relied upon in determining that there were no allegations outside either of the exclusions, if we move to Exclusion N, Exclusion N says this policy does not apply to any claim made against the insured based upon or arising out of the insured gaining any profit or advantage to which the insured is not legally entitled. And the allegations in the complaint are that as part of this scheme to strip the equity from the homeowners, Cornerstone gained a profit or advantage to which it was not entitled. What was that? If we look at Joint Appendix, I believe it's Joint Appendix 118, paragraph 47. Let me check that. 47 sets forth the foreclosure rescue defendant's stripping of the equity. If we then turn, I believe, to paragraph 68, at 124, in Count 1, the Division of the State realleged all of the prior allegations, and then at 69 it contends that each of the foreclosure rescue defendants acts on behalf of and in furtherance of this foreclosure rescue enterprise at various stages of the scheme. Each of the foreclosure rescue defendants is jointly and severally liable. I'm sorry, Your Honor, there is a... Let me find the... How does that give them a profit to which they're not legally entitled? Is there anything in the complaint that says they were not entitled to their settlement fee, the fee that appeared on the HUD? One moment, Your Honor. I believe they're... Your Honor, there's nothing in the complaint that alleges the cornerstone was not entitled or received fees in excess of what they were entitled to for their services, excepting the claim for relief at paragraph C and D, which asks for cornerstone to disgorge all of those fees and profits. But let me direct your attention to paragraph 16 of the joint appendix, which is incorporated into all of the counts. It describes the scheme that the foreclosure rescue defendants engaged in, and it concludes, this scheme results in enriching the foreclosure rescue defendants while homeowners lose both the title to their homes and the vast majority of equity they had built up in the homes. So the state alleged that cornerstone among the foreclosure defendants was enriched by its acts associated with the scheme. It makes that allegation. And the acts specifically related to cornerstone are cornerstone's failure to deliver the settlement checks to the homeowners. Instead, cornerstone was the linchpin in delivering those settlement checks to the Lewis defendants and to the Thomas defendants on occasion that allowed the Lewis defendants to then... How does that help you under exclusion in the... I mean, there's no allegation that they skimmed off the top of the settlement checks or anything of that nature. So how does that help you there? The exclusion says that it does not apply to any claim based upon or arising out of the insured gaining any profit or advantage to which the insured is not legally entitled. And we have the allegation in paragraph 16 that this scheme enriched the foreclosure defendants. Now, the complaint clearly states that this was intentional conduct. The complaint clearly states that cornerstone's behavior in delivering the checks to the Jones defendants and the Lewis defendants was improper. And that's the basis upon which the claims were made against cornerstone. The state said that cornerstone would be jointly and severally liable for all of the damages, just as the driver of a car would be jointly and severally liable for a doctor's malpractice. Well, isn't a fair reading of N that it requires that a profit or gain is illegal, not an illegal act that produces a profit or gain to the insured as a byproduct. Isn't that a fair distinction? I'm sorry, Your Honor. I did not catch the question. In equating illegal profit or advantage with illegal profit or gain, there's some holding out there that such an exclusion requires a profit or gain that is illegal, not an illegal act that produces a profit or gain to the insured as a byproduct. If that's true, where is the illegal profit or gain that cornerstone got? The illegal profit or gain is alleged in paragraph 16, where cornerstone was enriched by the equity stripping scheme to which it was a party. Now, that enrichment has not been specified in the complaint. It was not specifically identified in the complaint with respect to any of the defendants. But if you address your attention to paragraphs 52 through 65 at Joint Appendix 119 to 124, it lists each of the transactions in which cornerstone was involved, in which equity was stripped. One of them totaled nearly $70,000 in equity that was stripped out of the transaction. Now, the complaint does not allege which of the particular defendants participated in the proceeds of that, but it's clearly alleged in the complaint that cornerstone was wrongly and unjustly enriched by its participation in this scheme. I see that my time is about up. Thank you very much. Mr. Brennan, anything you wish to add? Yes, thank you, Your Honor. I'd like to add a couple of things just based on the argument of opposing counsel. One is that the acts that don't relate to the settlement checks for which cornerstone was alleged to be liable support both counts, not just count one. Two is that in addition to the allegation regarding the checks, at Joint Appendix 107 and 116, paragraphs 7 and 41, the Consumer Protection Division alleged that by providing, in conducting the real estate settlement for the properties, in conducting the real estate settlement services, that cornerstone shared liability because obviously the transactions weren't going to be completed without real estate settlement services. Those allegations are not specific about the checks and don't relate to the checks. I also respectfully, to opposing counsel, take issue with his characterization that the second amended complaint does not specify who obtained the alleged profit. The second amended complaint expressly alleges that with regard to the checks, that after they received the checks unendorsed, the homeowners signed the checks over to the Lewis defendants. The Lewis defendants got the checks and it specifically alleges that the Lewis defendants obtained an allegedly improperly recorded title to the property. So those are specific allegations about if you improperly obtain an interest, the Lewis defendants improperly obtain an interest in the property, it is they who, if there were any improper proceeds from the equity, it is they who received it and it was they who received the checks. And just finally, unless there are any questions, there was some discussion by opposing counsel that he doesn't believe that some of the allegations about joint and several liability, separate and aside from the allegations regarding the checks, would ultimately be sufficient to support the causes of action alleged against Cornerstone. But I want to make it clear under Maryland law, that's not the touchstone for a duty to defend. Policy requires defense of claims potentially covered irrespective of whether the claims are even fraudulent or they can't succeed. The Court of Appeals in the Mutual Insurance Company versus Vollmer case and other cases cited in our brief of Maryland has specifically rejected the concept that an insurer can disclaim a defense by saying, well the allegations against the insured won't ultimately be successful, therefore we don't need to defend them against them. If the allegations don't all fall within an exclusion, that's the whole purpose of a policy like this, which the Court of Appeals has characterized as litigation insurance. It's not that you have to defend somebody whether you think they're going to win or not, if any allegations are not within an exclusion. And Maryland law is clear on that. Oh yes, absolutely. Unless the Court has any questions, I only have ten seconds left anyway. Thank you. Thank you very much.
judges: G. Steven Agee, G. Steven Agee, Henry F. Floyd, Henry F. Floyd, Stephanie D. Thacker, Stephanie